UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24CR80115-DMM

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **GOVERNMENT'S RESPONSE TO** |
| v. ) | **DEFENDANT'S MOTION FOR** |
| ) | **DOWNWARD VARIANCE** |
| JAMES WILLIAM LATTA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to the Defendant's motion for downward sentencing variance from the United States Sentencing Guideline (USSG) range to 180 month's imprisonment, and state as follows:

The defendant has plead guilty to Count 1 and 2 of the Indictment. Count 1 comprises the defendant's criminal violation of advertising child pornography on July 5, 2024. Count 2 includes the defendant's criminal violation of distributing child pornography on August 26, 2024. DE 20. These counts represent 2 of hundreds of illegal activities committed by the defendant, James Latta over years of online child exploitation.

In exchange for his guilty plea the government promised three things: the dismissal of counts, the foregoing of additional charges, and to recommend a sentence within the guideline range. In dismissing Counts 3 and 4 of the Indictment, the defendant's exposure of prison time is capped at 50 years instead of 90 years. *Id.* ¶ 4. Moreover, the government agreed to forego charging the defendant with the more serious crime of child exploitation enterprise in violation of 18 USC 2252A(g) in which he could have faced a minimum of 20 years to a maximum of life. *Id.* ¶ 11.

Finally, the government has agreed to recommend a sentence within the court-approved USSG range.

In exchange for the government's concessions, the undersigned will seek the high end of the USSG range adjudicated by this Court. Presently there are four objections outstanding which the Court must adjudicate at sentencing which could swing the USSG range from below the 180-month minimum mandatory sentence to a recommended sentence of life imprisonment (which in this case is 50 years).

The undersigned will more fully detail the facts and reasoning for its request at the sentencing hearing. However, within four business days of the sentencing hearing, the defendant filed a motion for downward variance seeking the minimum allowable sentence: 180 months. DE 36. The government objects to this request and will briefly touch on a few issues raised in the defendant's motion.

At the outset, the defendant offered that he "is someone who has always sought to put his family first." DE 36:1. This is the same person who told countless people online how he molested his daughter from infancy to elementary school age. He described how he enjoyed seeing his 11-year-old daughter's pubic region this last July 4, how he made sure she would see his penis, and only but for his wife being around he did not masturbate in front of her. PSR ¶ 38. More specifically he offered to the UC almost immediately after they started chatting about his daughter:

> I started licking her about 6 months old and cumming on her. A lil after she turned 1 when we'd shower together she'd reach up and play with my cock. Showered together till she was about 4… then wife said she was getting too old to shower with me anymore so everything stopped

PSR ¶ 15. This is the same person who on the day before his arrest, announced to dozens of people in the chat room he created, that he would be molesting his daughter the next day in their family cabin PSR ¶ 46. He offered, "I'd love to get my cock in her…but would be happy with just play

too." *Id.* When his daughter did not go with him to the cabin, he instead had his dog perform felacio on him and record the same. *Id.* The defendant's sexual prowess shows him using his daughter to hype up his own sexual gusto, encourages others to do the same, and puts *only himself* first. LATTA denies hands-on offending on his daughter, however, as far back as 2020, when his daughter was 7 years' old, LATTA, his wife and daughter were on a small boat where LATTA photographed his wife masturbating, exposing her vagina and breasts, licking the latter. PSR ¶ 63. Their daughter sat but a few feet away as her father recorded her mother. *Id.* Despite the child's statements that her father never inappropriately touched her, LATTA took whatever liberties he chose. LATTA's family and his daughter are far from first…they are last.

The defendant blames his actions, not on selfishness and being sexually attracted to children, pre-teens, infants, toddlers, and even his own daughter, but on his own childhood physical abuse, and alcohol. DE 36:1. And it is true that the defendant has led an otherwise law-abiding life – he went to college, had steady employment, is married, and has a supportive family. Strangely, however, the childhood abuse and alcohol have had but one negative effect on his life – he has become a prolific exploiter of children.

The defendant sought women with children he could exploit. He had at least 1 women molest her child at his direction and record the same. PSR ¶ 52. He created a chat room to beget other like-minded child sexual exploiters together to share child sexual abuse material, to think of them as nothing more than baseball cards whom they could do with as they please, to talk about molesting children, to encourage each other to be the most deviant of society. The defendant brought them together; he encouraged them; he distributed child pornography or child sexual abuse material (CSAM); and he provided them a link to a website storage container that had thousands and thousands of videos of CSAM in preteens, toddlers, infants, and even babies! Why should

there be any sympathy or leniency for a man who had no issue with these young children being molested and sharing the same to excite his own sexual libido and those of others.

He offers this court that his depression, self-medication and alcoholism are not "excuses" for his crimes but an "explanation" as to how he could have gone down this dark road. DE 36:3. He can call it whatever he wants – but he exploited these children at will. These children did not have a voice or offer their permission to be ill-used for the defendant's enjoyment; their parents did not consent. How could they? The defendant took advantage of them because it made him feel good, powerful, and in control.

Now this Court can cause the defendant to know what it is like to have others in control of him – the highest sentence allowable will ensure that each day, for a long as possible, the defendant knows the pain he helped each of those children endure, the pain a child in Michigan endured who the defendant encouraged to be molested, and the pain his own daughter will endure for the rest of her life as countless pedophiles think about her and use the defendant's words as motivation to molest their own children.

In his sentencing memorandum, the defendant explains to this Court what he did not do – he did not produce any of his own CSAM, he did not touch a child. DE 36:4. There is only one person who knows whether this is true or not – the defendant. And he wants this Court to believe him. In the same breath, he says his exhaustive communication about molesting his daughter was just a story and thus he lied to other likeminded child exploiters. He also then encouraged a mother to molest her own child. Nothing the defendant says can be believed – he will say or do whatever is necessary to protect himself.

As most defendants who face sentencing in child exploitation cases, the defendant attacks the USSG as antiquated and unfair. DE 36:8. The USSG is our starting point and is wholly

discretionary. However, the guidelines reflect the defendant's actions and are appropriate. He also offers a comparison to other similarly and not-similarly situated defendants. He cites to two older cases who received significant variances. De 36:9-10. He also referenced a more recent case before Judge Ruiz who received 190 month's imprisonment. *Id.* Finally he cited to the case of Codey Bates, who Judge Rosenberg sentenced in 2023 to 27 years' imprisonment for on one occasion livestreaming his infant son touching Bates' penis, which another person recorded. Bates faced a maximum of 30 years and had mental health issues. But the facts of these cases are very dissimilar from LATTA. In fact there is no case that similarly situates to LATTA.

What the defendant does not do is look at somewhat similar cases this Court has dealt with. This Court need look no further than *United States v. Santiago, et al.*, 22-cr-80127-DMM, in which five defendants, Anthony Wayne Santiago, 28, of Michigan, Jacob Dominic VanDyke, 25 of Michigan; Johnathan Scott Fleak, 32 of Oklahoma, Aaron Ray Iuliano, 27 of Ohio, and Michael Paul Gianfrancesco, 39 of Tennessee, all pled guilty to conspiracy to distribute child pornography and distribution of child pornography of children of prepubescent children. These five defendants entered and participated in a private Kik chat room, each distributing CSAM in a chatroom predicated on the distribution of CSAM with children as young as 4 years' old. These defendants all distributed, solicited and discussed CSAM and the sexual abuse of children amongst more than 50 other individuals. They all received sentences from 13 to 30 years, including Santiago who was an already registered sex offender. They each distributed less than half-a-dozen times over a limited three-week period. And while two of the offenders had histories of other line child exploitation, none of these offenders were administrators or creators of a chat room, none of them had private chat with an undercover agent soliciting a child for sex, and none of them directed a mother to physically molest her child, as LATTA did.

These five offenders' actions and history (save Santiago's prior conviction for having sex with a 12-year-old girl when he was 17 years old) pale in comparison to LATTA. LATTA created the chatroom, he set the rules, he admitted and banned members, he encourage the members to distribute, he distributed more than 200 images and videos of CSAM himself (not counting the link containing thousands), and he ran the room for months. When he was banned by Kik he quickly re-entered and re-established himself as the leader. He communicated with others to encourage them to offend against children. He co-conspired with a Michigan woman to molest her child. He solicited the UC for months to molest her 8-year-old child, distribute videos of himself masturbating to the UC's child, and engage sexually with the child – even sending videos encouraging the UC to rape her notional child. several of which showed a woman molesting her young female child. None of the *Santiago, et al* defendant's even came close to this level of offending.

LATTA told the UC that he preferred CSAM of "pee, beast (bestiality), and pregnant, breastfeeding/ lactating." PSR ¶ 13. LATTA talked of wanting to ejaculate on a woman's breasts while breast feeding her babies. *Id*. He told the UC that he "missed a golden opportunity a few years ago that I still kick myself everyday for. Met a mom here that was breastfeeding and wanted me to fuck her while she was….and wanted me to cum on her son's dick so she could suck it off. She was only like 20 minutes away from my project at the time, but I couldn't get away from work." PSR ¶ 34. He distributed a video of a woman breastfeeding her child, forcibly holding the child down so she could orgasm. PSR ¶ 49.

He described his online activities as "pervin." PSR ¶¶ 23, 30, 33. LATTA was happy that his construction job of building apartments was next to a daycare, where he wanted to "hop the fence and have real fun." PSR ¶ 33. LATTA messaged about what he would do when the apartments

were completed: "I'll be able to go into a unit and watch the lil ones outside while stroking." *Id*. He later added that he wanted to "walk into the daycare next to me with my cock out. Get all the lil toddlers around me for show and tell. Let em all play with my cock. So many lil hands touching me…Get em all naked. And rub my cock on every lil pussy and cock there." PSR ¶ 36.

Beyond his daughter, LATTA also described his desire to molest his 2-year-old niece, messaging the UC: "Got to lick a lil pussy this weekend." In detailed fashion he then wrote:

> He explained that he was holding his niece during his own child's birthday party, and realized his niece needed to be changed. He told his sister he could do it for her and then went into the bathroom with his niece. He told the UC that his "cock was throbbing hard" before he could get her bottoms off. He said after he wiped her clean, he "just had to taste." He stated, "So bent down licking her tiny slit while rubbing my cock through my shorts. I wanted to pull it out and rub it on her and cum on her sooooo bad." Latta went on to state that his niece giggled while he performed oral sex on her. He then commented that his niece was very cute, and that she is "half blk so gorgeous skin. My cum would've really shown on her brown pussy."

PSR ¶ 35. LATTA in fact has a niece who matches this description. LATTA is the alpha of online offenders. It is inconceivable how many children have or will be molested because of his communication, leadership, encouragement, and distribution. A sentence at the highest end must reflect that.

LATTA utilized Kik for the better part of at least 2 years to commit nearly every act of online child exploitation available short of producing his own material of his own child. He even used an alternative application for Kik that allowed him more control and protection from being banned. PSR ¶ 60. He instructed other users on this technology even how to use it. PSR ¶ 61.

LATTA also asks this Court to consider his "cooperation" before his sentencing. Although LATTA met with agents to identify other offenders, none have been fully identified, arrested, prosecuted or convicted. Therefore LATTA is not entitled to any benefit therein until and if this information comes to fruition. Otherwise he would benefit twice: once now and once when he would petition for a Rule 35 motion.

For the above reasons, the Government requests this Honorable Court to sentence the defendant appropriately. It is the government's recommendation, based upon the limitation of the plea agreement, that the defendant be sentenced to the highest end of the guidelines, even if that sentence should be 50 years.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By: s/ *GREGORY SCHILLER*
Gregory Schiller
Assistant United States Attorney
Fla. Bar. 0648477
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Email: gregory.schiller@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

    s/*Gregory Schiller*
    Gregory Schiller
    Assistant United States Attorney